IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| REX HARRIS, *Individually and on Behalf of the Estate of Brenda Harris*,<br><br>    Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC. OF TEXAS, UNITEDHEALTH GROUP EMPLOYEE BENEFIT PLAN ADMINISTRATIVE COMMITTEE, and ALIGHT SOLUTIONS,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§    Civil Action No. 3:23-CV-02486-E<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants UnitedHealth Group, Inc. of Texas's ("UnitedHealth"), UnitedHealth Group Employee Benefit Plan Administrative Committee's (the "Administrative Committee"), and Alight Solutions' (all collectively "Defendants") Motion to Dismiss. (ECF No. 17). Defendants seek dismissal of all of Plaintiff Rex Harris's, *Individually and on Behalf of the Estate of Brenda Harris*, ("Harris") claims under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim. After reviewing the motion, briefing, and applicable law, the Court **GRANTS** Defendants' motion.

## I.  BACKGROUND

This lawsuit arises out of an insurance dispute between a former employee's husband—Harris—and the employer—UnitedHealth. Harris's wife, Brenda Harris, was hired by UnitedHealth in 2006 as a nurse. (ECF No. 12 at 6). She then transitioned to become a successful case manager for UnitedHealth for over fifteen years. (ECF No. 12 at 6). While employed, Brenda Harris enrolled in two of the employee benefit plans UnitedHealth sponsored for its employees:

(i) the group health plan for UnitedHealth employees and their families; and (ii) the life insurance plan that offered a life insurance benefit to an employee's named beneficiary in case of the employee's death. (ECF No. 17-3 at 9). Both benefit plans were administered by the Administrative Committee. (ECF No. 12 at 2).

In the summer of 2020, Brenda Harris was diagnosed with colon cancer, eventually forcing her to retire from UnitedHealth. (ECF No. 12 at 6-7). On October 13, 2021, UnitedHealth mailed Brenda Harris a COBRA Enrollment Notice package that included an election notice informing her that if she chose to have her health insurance continue after termination, she owed a premium of approximately $1,527.79. (ECF No. 12 at 7). The COBRA Enrollment Notice package also included Life Insurance Conversion information on how Brenda Harris could convert her employee life insurance provided by UnitedHealth to an individual policy. (ECF No. 12 at 7). Included in this package was an Individual Life Conversion Request for Information ("ILCRI"), instructing Brenda Harris to fill out the form for UnitedHealth to provide her with an application and cost of the conversion. (ECF No. 12 at 7). If the ILCRI was not executed or the premium was not paid within the statutory timeframe, both Brenda Harris and her named beneficiary—Harris—would lose their health care benefits and their life insurance money. (ECF No. 12 at 7).

Although Brenda Harris originally opted to enroll in COBRA, she subsequently made the decision to end all treatment and thus discontinued paying the COBRA premium. (ECF No. 12 at 8). As alleged, the Harrises[1] did not realize that the COBRA benefits included the life insurance policy, in addition to the healthcare insurance. (ECF No. 12 at 8). Thus, by discontinuing the COBRA payment and not returning the ILCRI, both healthcare insurance and life insurance would be terminated as to the Harrises. (ECF No. 12 at 8-10).

---

[1] The Court refers to Brenda Harris and her husband—the named plaintiff—collectively as "the Harrises."

On October 30, 2021, Brenda Harris suffered a stroke, revealing a cancerous brain tumor that had been growing for over a year. (ECF No. 12 at 9). As alleged, the brain tumor had impaired Brenda Harris's mental state, thus weakening her capacity to communicate the importance of the insurance documents to her husband. (ECF No. 12 at 10). Further alleged, because Defendants were close friends of Brenda Harris and had knowledge of her impaired health and cognitive state, Defendants had a duty to contact Harris due to his wife's deteriorated capabilities. (ECF No. 12 at 9-10). Defendants did not do so, and thus when Brenda Harris failed to pay the premium or execute the ILCRI, the life insurance benefits due to her beneficiary—Harris—were terminated when Brenda Harris passed away on December 30, 2021. (ECF No. 12 at 10).

Harris initiated this litigation in state court on October 9, 2023. (ECF No. 1-3). Defendants removed this action to federal court on November 8, 2023, under ERISA's complete preemption doctrine. (ECF No. 1). Harris filed an Amended Complaint on January 2, 2024, alleging five causes of action against Defendants: (i) violation of ERISA/COBRA; (ii) declaratory judgment; (iii) breach of contract; (iv) violations of the Texas Insurance Code; and (v) breach of common law duty of good faith and fair dealing (acting in bad faith). (ECF No. 12).

Defendants filed their motion to dismiss on January 23, 2024, seeking dismissal of all of Harris's claims for failure to state a claim. (ECF No. 17). Defendants' appendix in support, (ECF No. 17-1), and brief in support, (ECF No. 17-3), were filed contemporaneously with their motion. Harris responded to the motion on April 12, 2024, (ECF No. 24), and Defendants subsequently replied, (ECF No. 27), on May 10, 2024. Thus, the motion is fully briefed and ripe for adjudication.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a

plaintiff fails to satisfy Rule 8(a), the defendant may file a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the courts to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion to dismiss, "the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 725 (5th Cir. 2019). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

### III. ANALYSIS

As stated above, Harris asserts five causes of action against Defendants—one federal and four state law claims. The Court will first address the federal ERISA/COBRA claim, and then will address the state claims together.

**A.     ERISA/COBRA Violation**

*1.     ERISA/COBRA Overview*

The COBRA amendments to the Employee Retirement Income Security Act of 1974 ("ERISA") provide employees with the option of continuing the insurance coverage they had under their employer's policy in circumstances where they would lose coverage because of a "qualifying

event." 29 U.S.C. § 1161. Qualifying events include "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163(2). Under 29 U.S.C. § 1166(a)(4), ERISA requires an administrator of a group health plan, at the time of a qualifying event, to notify any qualified beneficiary of the beneficiary's right to elect COBRA coverage. Such notice must be:

> written in a manner calculated to be understood by the *average plan participant* and shall contain the following information: (i) ... the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits; ... (v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made; ... [and] (xii) ... the address to which payments should be sent.

29 C.F.R. § 2590.606-4(b)(4) (emphasis added).

Harris asserts that Defendants violated ERISA and COBRA under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4(b)(4), respectively, by "fail[ing] to provide notice written in a manner calculated to be understood by the average plan participant." (ECF No. 12 at 11). Harris does not dispute that his wife did not apply to extend his life insurance benefits; in fact, he explicitly states that he did not qualify for benefits under the terms of the life insurance plan as all insurance—both healthcare and life—were cancelled when Brenda Harris stopped paying the COBRA premium and failed to execute the ILCRI. (*See* ECF No. 12 at 8-10). Instead, Harris asserts that his wife did not elect to continue COBRA coverage due to Defendants' "deficient and confusing notice"—specifically that "Defendants' confusing practice of enclosing the ILCRI in the Cobra Enrollment Notice package was prone to misunderstanding by the average person, especially a person suffering from a massive brain tumor." (ECF No. 12 at 12-13). Harris asserts that Defendants' deficient notices caused Harris not only a tangible economic injury, but also an informational injury and emotional distress. (ECF No. 12 at 13).

In response, Defendants assert that Harris fails to make any plausible allegation that the COBRA Notice or Life Insurance Notice were vague, unclear, or otherwise deficient—proving fatal to his ERISA claim. (ECF No. 17-3 at 14-15.) But even if Harris did plausibly allege that the COBRA Notice was confusing or deficient, Defendants assert that his claim to recover life insurance benefits would fail as a matter of law as COBRA only applies to group health plans. (ECF No. 17-3 at 16). Even further, Defendants allege that Harris cannot save his claim by arguing that "Defendants' had a moral or legal duty to provide individualized advice to him about how to maximize his benefits options" as the Fifth Circuit has repeatedly held that an employer does not have any duty to provide individualized advice to participants about how to maximize their ERISA plan benefits. (ECF No. 17-3 at 17-18).

2.   *Notice Under ERISA/COBRA*

First, the parties do not dispute that the Defendants are the plan administrators, specifically the Administrative Committee. (*See* ECF No. 12 at 2; ECF No. 17-3 at 9). It is further undisputed that the COBRA notice requirement turns on whether notice is understandable by the average plan participant. "ERISA plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience ... [and] must be interpreted as they are likely to be understood by the average plan participant." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 195–96 (5th Cir. 2015). Further, Harris contends that this "requirement has been interpreted as an objective standard rather than requiring an inquiry into the subjective perception of the individual plan participants." (ECF No. 12 at 11).

Thus, Defendants were statutorily required to provide notice to Brenda Harris "written in a manner calculated to be understood by the average plan participant." C.F.R. § 2590.606-4(b)(4). As to Defendants' first contention, the Court agrees that the notices provided to Brenda Harris

were perfectly clear and that Harris fails to point to any specific provision of the COBRA Notice or the Life Insurance Notice that is deficient, unclear, or confusing. Harris merely cites ERISA and COBRA provisions and conclusively asserts that "[t]he UHG Defendants' confusing practice of enclosing the ILCRI in the Cobra Enrollment Notice package was prone to misunderstanding by the average person, especially a person suffering from a massive brain tumor." (ECF No. 12 at 12). He alleges little more than quoting the regulations to demonstrate how the average plan participant could not understand Defendants' notices, or what, in particular, made such notices "deficient and confusing." In fact, the Life Insurance Notice was titled "Conversion Notice – UnitedHealth Group," and under a heading in bold reading "Action Needed – If you want to convert you or your dependent's life insurance coverage," the notice lists three steps. (ECF No. 17-1 at 71). Stated simply, Harris fails to provide any evidence to support his conclusory allegations, and such unsupported contentions do not adequately state a § 1166 claim.

Harris further asserts that that there was a "heightened duty for the UHG Defendants to follow up and ensure that the Plaintiffs understood not only the COBRA requirements (and the consequences of not paying the premiums) but also the urgent need to convert the UHG Defendants' Life Insurance policy to ensure they would receive the death benefits" that the Harrises knew would be needed should Brenda Harris lose her life to cancer. (ECF No. 24 at 18).

This assertion that a "heightened duty" was owed to the Harrises by Defendants is in direct contrast to Harris's assertion that the average plan participant requirement is an "objective standard rather than requiring an inquiry into the subjective perception of the individual plan participants." (ECF No. 12 at 11). In fact, that is exactly what Harris is attempting to get the Court to do—impose a heightened duty on Defendants' notice requirement due to the allegedly impaired subjective perception of Brenda Harris.

Harris cites multiple cases to allege that in cases where a former employee is known to have a terminal illness that may encumber their understanding of COBRA or related life insurance benefits, "[c]ourts have imposed a heightened duty on employers (or plan administrators) to ensure that the employee fully understands the consequences of electing to enroll or not enroll." (ECF No. 24 at 16). First, of the nine cases he cites, only one is Fifth Circuit precedent. (*See* ECF No. 24 at 16-18). Second, Harris is mistaken in the applicability of these cases. All of them discuss the fiduciary duty an employer has under ERISA, and the fiduciary's responsibility to provide full and clear information upon request. *See, e.g.*, *Keith v. Metro. Life Ins. Co.*, No. CV H-15-1030, 2017 WL 1026008, at *5 (S.D. Tex. Mar. 15, 2017) (finding fiduciary breached his duty when he failed to communicate important information regarding conversion after plan participant reached out). This is not the situation here—Brenda Harris did not ask Defendants for further information, nor did Defendants fail to give notice. Instead, she timely received clear notice—both the COBRA Notice and the Life Insurance Notice—but Harris alleges that because Defendants were familiar with Brenda Harris's situation, they had a moral and legal duty to make sure she understood the insurance benefits. (ECF No. 12 at 10). However, "absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists." *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1299 (5th Cir. 1995). Further, "this Court is unaware of any provision under ERISA that requires an employer to personally marshal an employee through the application process when there is knowledge of an employee's illness." *Shonowo v. Transocean Offshore Deepwater, Inc.*, No. 4:10-CV-1500, 2011 WL 3418405, at *7 (S.D. Tex. Aug. 3, 2011). "The law requires nothing more than for an employer to make a "good faith" attempt to provide notification." *Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir. 2002).

There is nothing in the record to demonstrate Defendants did not make a good faith effort to provide notification; Harris does not allege such notification was not given, but rather that the notification given was insufficient. Defendants timely sent Brenda Harris her COBRA Notice and her Life Insurance Notice written in a manner to be understood by the average plan participant, and thus Defendants have satisfied their duty under this circuit's precedent. Although the Court is sympathetic to the severity of the situation the Harris family was facing, the Fifth Circuit does not require a heightened standard as to notice requirements.

The Court pretermits discussion of Defendants' argument that life insurance benefits are not applicable here because COBRA only pertains to group health plans, as the Court has already sufficiently discussed Harris's failure to state a claim of an ERISA/COBRA violation, thus resulting in dismissal of such claim. The Court grants Defendants' motion to dismiss on Harris's federal claim, as Harris failed to prove that: (i) Defendants' Notices were not understandable by the average plan participant, and (ii) a heightened duty was owed to the Harrises. When Brenda Harris opted to discontinue the COBRA payments and failed to execute the ILCRI, health and life insurance benefits were terminated as to Brenda Harris and her beneficiary—Harris.

**B.    ERISA Preemption of State Law Claims**

As stated above, Harris alleges four state law causes of action in addition to his federal claim discussed above. His state law claims are: (i) declaratory judgment; (ii) breach of contract; (iii) violation of Texas Insurance Code chapter 542, chapter 1251.251-1251.260, and chapter 541; and lastly, (iv) breach of common law duty of good faith and fair dealing (acting in bad faith). (ECF No. 12 at 13-17). Defendants allege that all of Harris's state law claims are preempted by ERISA, and thus, must be dismissed. (ECF No. 17-3 at 19).

   *1.  ERISA Preemption Overview*

There are two types of ERISA preemption: complete and conflict preemption. ERISA section 502(a)(1) provides, in relevant part, that a participant or beneficiary of an ERISA-regulated plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[C]omplete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court." *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) ("[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions....then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."). If complete preemption exists, ERISA offers the sole framework for relief. *See Aetna Health*, 542 U.S. at 209.

"A second form of ERISA preemption, conflict preemption, exists when a state-law claim falls outside the scope of section 502's civil enforcement provision but still 'relates to' an ERISA plan under section 514." *Anzaldua v. TitanLiner, Inc.*, No. 3:19-CV-01933-E, 2020 WL 1236466, at *3 (N.D. Tex. Mar. 13, 2020). Under this form of preemption, ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA defines state law to include "all laws, decisions, rules, regulations, or other State actions having the effect of law, of any State." § 1144(c)(1). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). A state-law cause of action that relates to an ERISA plan is preempted even if the action arises under a general state law that "in

and of itself has no impact on employee benefit plans." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1292 n.5 (5th Cir. 1989). Conflict preemption serves as a defense to a state law claim and, if it applies, requires dismissal of the claim. *See, e.g., Menchaca v. CNA Grp. Life Assurance Co.*, 331 F. App'x 298, 304 (5th Cir. 2009) (per curiam). "Because ERISA preempts any state law that may relate to employee benefit plans, the Supreme Court has noted that ERISA's preemption clause has a broad scope." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 256 (5th Cir. 2019). However, "preemption does not occur if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Martco P'ship v. Lincoln Nat. Life Ins. Co.*, 86 F.3d 459, 462 (5th Cir. 1996).

Preemption of a plaintiff's state law causes of action are barred by § 1144(a) if: (1) the state law claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 245 (5th Cir. 1990). Accordingly, ERISA preempts any state law cause of action brought by an ERISA Plan participant alleging improper processing of a claim for benefits. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 42 (1987) ("The language and structure of [ERISA] support the conclusion that [it is] intended to provide exclusive remedies for ERISA-plan participants and beneficiaries asserting improper processing of benefit claims.").

2. *ERISA Preemption of Harris's State Law Claims*

Defendants assert that Harris's state law claims are preempted under the second form of ERISA preemption—conflict preemption—for three reasons. (ECF No. 17-3 at 20). First, Defendants assert that each of Harris's state law claims are preempted because they all seek

benefits under what he admits is the ERISA-governed Life Insurance Plan. (ECF No. 17-3 at 21). Second, Defendants argue that each of Harris's state law claims are preempted because they are premised on an alleged failure to provide proper notice of the right to continue benefits under the portion of ERISA called COBRA. (ECF No. 17-3 at 23). Lastly, Defendants assert that Harris's state law claims are preempted because they seek to expand upon causes of action found in ERISA §502(a). (ECF No. 17-3 at 24-25).

Harris counters that his state law claims are not preempted by ERISA as (1) the Life Insurance Plan is not an ERISA/COBRA product; (2) the Life Insurance Conversion Policy is not an employee benefit plan subject to preemption by ERISA; and (3) there is no nexus between his state law claims and ERISA. (ECF No. 24 at 22-29).

We must first establish that the Life Insurance Plan is an ERISA-governed plan. As stated above, it is undisputed that Brenda Harris participated in the benefits program—for both health and life insurance—provided by her employer, UnitedHealth. Under ERISA, an "employee welfare benefit plan" is defined, in part, as "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits." 29 U.S.C. § 1002(1). "To determine whether a particular plan qualifies as an ERISA plan, we ask whether the plan (1) exists; (2) falls within the safe harbor exclusion established by the Department of Labor; and (3) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants." *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir. 2000). The first and third elements are obviously satisfied—a plan exists and was established by Defendants to benefit its employees.

"To qualify as an ERISA plan, the plan cannot fall within the Department of Labor's 'safe harbor' exclusion." *McNeil*, 205 F.3d at 190. ERISA's § 505 granted the Secretary of Labor the authority to promulgate regulations for implementation of ERISA, 29 U.S.C. § 1135, and the Secretary has created an exemption for certain group or group-type insurance programs from the scope of ERISA. 29 C.F.R. § 2510.3–1(j)(1999). The Fifth Circuit has adopted this "safe harbor" for certain types of claims and has held that "an insurance policy is not governed by ERISA if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan." *McNeil*, 205 F.3d at 190. "The plan must meet all four criteria to be exempt." *McNeil*, 205 F.3d at 190.

Here, Defendants had a role in the administration of the conversion policy, as they were the administrators of the plan—a fact undisputed by the parties. (*See* ECF No. 12 at 2; ECF No. 17-3 at 9). Thus, by failing the first criteria, the Life Insurance Plan falls outside the safe harbor exclusion and satisfies all three elements to constitute an ERISA plan.

Because the Life Insurance Plan qualifies as an ERISA-governed plan, the Court now turns to preemption. The Court concludes all four of Harris's state law claims clearly involve the Life Insurance Plan and the availability of benefits under the policy. Thus, each claim "relates to" an ERISA-covered plan—concluding a sufficient nexus exists between the state law claims and ERISA. Further, the claims directly affect the relationship between principal ERISA entities—Harris as beneficiary—and Defendants as employer and plan administrator. *See Memorial Hosp. Sys.*, 904 F.2d at 249 ("[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an

outside party...."); *see also McNeil*, 205 F.3d at 191 ("A finding for either party will affect the obligations owed to the other under the provisions of the plan.").

Further supporting applicability of preemption here, Harris fails to provide evidentiary support that the Life Insurance Plan is not an ERISA plan, and thus is not preempted by ERISA.[2] The cases cited by Harris are inapplicable to the situation here and contradict his position. In the cases he cites, the courts conclude that state law claims arising under an already converted policy are not preempted by ERISA, but "rights relevant to the *process of converting* from an ERISA plan *are preempted by ERISA.*" *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 877 (9th Cir. 2001) (emphasis added); *see Owens v. UNUM Life Ins. Co.*, 285 F. Supp. 2d 778, 781-82 (E.D. Tex. 2003). The issue here involves an ERISA-governed life insurance plan *before* conversion, and thus, it is preempted by ERISA.

Thus, as the Life Insurance Plan is an ERISA plan, and all of Harris's state law claims are preempted by ERISA, the Court must grant Defendants' motion to dismiss on Harris's four state law claims.

C.  **Alight Solutions**

Additionally in their motion to dismiss, Defendants assert that Harris has not alleged a plausible claim against Defendant Alight Solutions. (ECF No. 17-3 at 26-27). Specifically, Defendants assert that Harris fails to make any plausible factual allegation suggesting that Alight Solutions did anything at all. (ECF No. 17-3 at 27). A party who fails to pursue a claim beyond its initial pleading may waive or abandon the claim. *Black v. N. Panola School Dist.*, 461 F.3d 584,

---

[2] Harris argues that Defendants contend that the Life Insurance Policy and its conversion is not subject to ERISA and/or COBRA. Defendants never make such assertion; rather one of their arguments to Harris's federal ERISA/COBRA claim is that the life insurance benefits are not applicable as COBRA is inapplicable. Defendants never argue that the life insurance plan is not governed by ERISA. Harris misconstrues Defendants' argument, and thus his recitation of Defendants' alleged assertion is inaccurate.

588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."). Thus, a party's failure to defend a claim in her response to a motion to dismiss constitutes abandonment. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment) (citing *Black*, 461 F.3d at 588 n.1); *see, e.g.*, *Vela v. City of Houston,* 276 F.3d 659, 678-79 (5th Cir. 2001) (discussing abandonment of theories of recovery and defenses when such theories were not presented to the trial court). Because the Court agrees that Harris fails to allege any claim against Alight Solutions, and Harris further fails to address such argument in his response to Defendants' motion to dismiss, the Court concludes Harris has abandoned any claims against Alight Solutions and dismissal is proper.[3]

**D.    Leave to Amend**

Harris has requested, in the event the Court deems his factual allegations insufficient, that he be allowed to replead. (ECF No. 24 at 31-32). The Fifth Circuit has addressed leave to amend pleadings:

> Under Rule 15(a), "leave to amend shall be freely given when justice so requires," and should be granted absent some justification for refusal. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The liberal amendment policy underlying Rule 15(a) affords the court broad discretion in granting leave to amend and, consequently, a motion for leave to amend should not be denied unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment, ..." *Foman*, 83 S.Ct. at 230.

---

[3] *See also, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)) (citations omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). "Granting leave to amend ... is not required if the plaintiff has already pleaded her '"best case."'" *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam))). "A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint." *Wiggins*, 710 F. App'x at 627 (internal quotation and citation omitted). The Fifth Circuit further explained:

> **A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court.** See *Brewster*, 587 F.3d at 767–68**. Similarly, a district court need not grant a futile motion to amend.** *Legate*, 822 F.3d at 211 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000)). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*

*Wiggins*, 710 F. App'x at 627 (emphasis added in bold). The Fifth Circuit has affirmed denials of leave to amend where it determined that the proposed amendment would be futile after analyzing the claims. *See Edoinwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (where the proposed amended complaint failed to state a claim under 42 U.S.C. § 1983).

Here, Harris did not expressly request with particularity the opportunity to amend his complaint. *Willard*, 336 F.3d at 387. Harris's request for leave to further amend his complaint states:

> Although the allegations in the Plaintiffs' Amended Complaint are, at minimum, sufficient to meet the *Ashcroft* plausibility test and the Amended Complaint's factual content allows this Court to draw the reasonable inference that UHG

> Defendants are liable for the misconduct alleged, there is admittedly always room for improvement. Should this honorable Court find that there is room for additional improvement in the Plaintiffs' Amended Complaint, they respectfully pray that the Court grant leave to file a Second Amended Complaint to address the Court's concerns and the issues raised by UHG Defendant's Rule 12(b)(6) Motion to Dismiss. Permitting the Plaintiffs to make amendments to their Amended Complaint would not be an act of futility. Whatever the inartful imperfections of the Amended Complaint's allegations, the Plaintiffs were indisputably harmed by the UHG Defendants and their acts, or lack thereof, which have caused the Plaintiffs to suffer severe economic distress.

(ECF No. 24 at 31-32). This "does not provide any indication of the grounds on which such an amendment should be permitted." *Willard*, 336 F.3d at 387. Northern District of Texas Local Civil Rule 15.1 requires a party seeking leave to file an amended pleading to "attach a copy of the proposed amended pleading as an exhibit to the motion[.]" N. D. Tex. Loc. Civ. R. 15.1(a). Harris attached no amended pleading to his request for leave. Furthermore, the Court determines Harris's amendment would be futile. Critically—as discussed above in the Rule 12(b)(6) analyses—Harris's Amended Complaint is devoid of pled facts regarding (i) how Defendants' Notices were not understandable by the average plan participant, and why (ii) a heightened duty was owed to the Harrises. (*See* ECF No. 12). Most importantly, Harris contends that the Notices were received by his wife, and that she failed to pay the COBRA premium and execute the ILCRI, thus resulting in the loss of insurance benefits. (*See* ECF No. 12). For those reasons, the Court concludes permitting Harris "any [further] attempts at amendment would be futile." *See generally Wiggins*, 710 F. App'x at 627 (discussing the same). The Court thus denies Harris's Motion for Leave.

### IV. CONCLUSION

For the reasons enumerated above, the Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 17), and dismisses all of Harris's claims with prejudice. Further, the Court **DENIES** Harris's request for leave to amend. The Court shall enter a corresponding final judgment. *See* Fed. R. Civ. P. 54.

**SO ORDERED:** May 28, 2024.

Ada E. Brown
UNITED STATES DISTRICT JUDGE